Ray V. BELNAP, Plaintiff-Appellant,

v.

Andrew CHANG, individually and in his capacity as Director of the Department of Social Services and Housing, State of Hawaii, et al., Defendant-Appellee.

No. 82–4206.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 16, 1983.

Decided June 10, 1983.

GOODWIN,. Circuit Judge.

Ray V. Belnap, former Director of Corrections for the State of Hawaii, appeals a judgment holding that his resignation did not deprive him of liberty or property without due process of law.

On February 10, 1975, Andrew Chang, Director of the Department of Social Services and Housing, informed Belnap that if he did not resign he would be suspended from his job for 10 days and then dismissed. Chang had prepared two letters, one a letter of resignation, and the other a letter of dismissal. Belnap read both documents and said that he wanted to prepare his own resignation letter. He went back to his office and wrote "I wish to submit my resignation from my position as Corrections Division Administrator and retire from state service after 14 years to be effective February 10, 1975." Belnap signed the letter and submitted it to Chang within an hour of their first meeting. Belnap now claims that he was under time pressure imposed by Chang and that therefore his resignation was coerced. He claims that the constructive dismissal deprived him of a property interest without due process of law.

Chang sought Belnap's resignation at the recommendation of a prison task force chaired by Lieutenant Governor Doi. The task force had been appointed to investigate a number of problems within the prison system, including corruption, inmate-held weapons, and security, disciplinary and morale deficiencies. At the task force's recommendation, the National Guard was called in and took over the prisons just a few hours before Belnap resigned. Numerous stories in the press and statements by Lieutenant Governor Doi and others reflected unfavorably upon Belnap's competence as an administrator. Belnap contends that because this publicity injured his reputation, he was also deprived of a liberty interest without due process of law.

Belnap was a civil servant. As such, he was "entitled to hold his position during good behavior..." Hawaii Revised Statutes § 76–30 (1968). Hawaii Revised Statutes § 76–48 (1968) provides:

Gary W.B. Chang, Honolulu, Hawaii, for defendant-appellee.

E. Courtney Kahr, Lihue, Hawaii, for plaintiff-appellant.

Before GOODWIN, TANG and FARRIS, Circuit Judges.

"As to any matter within the scope of this part, any person suffering legal wrong because of any action by . . . his appointing authority, or adversely affected or aggrieved by such action, shall be entitled to appeal to the civil service commission . . . . The appeal shall be made within twenty days after notice of the action has been sent to the person. . . ."

Belnap petitioned the State Civil Service Commission for a hearing on his "coerced" resignation on June 25, 1975, four and one-half months after the resignation. The commission dismissed Belnap's petition as untimely. Belnap appealed to the Hawaii state courts and his appeal was dismissed on March 8, 1977. He filed his 28 U.S.C. § 1343 and 42 U.S.C. § 1983 action in United States District Court on February 8, 1977, one day before the applicable statute of limitations for tort claims against the state had run. After a lengthy trial, the court found that Belnap had resigned voluntarily. The court also held that neither Chang nor Doi had violated Belnap's right to due process of law.

■ We must accept the trial court's findings of fact if they are not clearly erroneous. Fed.R.Civ.P. 52. The trial court's application of a legal standard is reviewable as a question of law. *United States v. Smith,* 625 F.2d 278 (9th Cir.1980). The facts in the case before us are not in substantial dispute. The question of due process is in dispute.

■ The Supreme Court in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), enunciated a two-step process for analyzing cases involving deprivation of a governmental benefit. First it must be ascertained whether the interest at issue is a constitutionally protected "property" or "liberty" interest. Second, if the interest is a protected one, the court must determine if the deprived beneficiary has been afforded due process. *Geneva Towers Tenants Org. v. Federated Mortgage Inv.,* 504 F.2d 483, 488 (9th Cir.1974).

Belnap had a protected property interest in his job. We can assume, without deciding, that a liberty interest also was affected. *See Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The important question is what process was "due" to Belnap.

The district court found that Belnap's resignation was not coerced and that he had voluntarily relinquished his property and liberty interests, citing *McGucken v. United States,* 407 F.2d 1349, 187 Ct.Cl. 284 (Ct.Cl.), *cert. denied,* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969) and *Christie v. United States,* 518 F.2d 584 (Ct.Cl.1975). We need not reach the correctness of the finding of voluntariness, however, because even if Belnap's resignation was coerced, as he now contends, he was nevertheless afforded due process.

In *Stephens v. Postmaster General,* 623 F.2d 594 (9th Cir.1980), we affirmed a district court's dismissal of a due process claim against the Postmaster General. A discharged postal worker had appealed to the Civil Service Commission too late under the Postal Service rules, and his appeal was rejected as untimely. The Civil Service Commission's Board of Appeals and Review had affirmed. We held that where procedures are established for a hearing concerning discharges and a discharged employee does not avail himself of those procedures in a timely fashion, he forfeits his right to the post-discharge hearing. We therefore upheld the Civil Service Commission's rejection of his appeal because he had not brought the appeal within 15 days following the effective date of removal. We also held that the failure to file a timely appeal constitutes a failure to exhaust administrative remedies, thus precluding judicial review. We noted that Stephens was fully aware of the 15-day time limit.

*Stephens* controls the case at hand. Belnap was aware of the 20-day time limit on appeals of adverse actions under Hawaii Revised Statutes § 76–48. That time limit was specifically noted in the last paragraph of the dismissal letter that was shown to Belnap on the day of his resignation. Belnap himself had discharged a number of employees and was aware of the regula-

tions. His appeal to the State Civil Service Commission states: "I realize that this appeal is not made within the 20-day period authorized by the rules and regulations."

Although the procedure that Hawaii has established for appeals of dismissals does not provide for a pretermination hearing, such hearings have not been required by law in every case. A post-termination hearing that includes the possibility of reinstatement with back pay was upheld in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). In *Arnett* the court upheld the Office of Economic Opportunity's employee dismissal procedure that provided a trial type hearing only after termination. Justice Powell in his concurrence noted that the government's interests in expeditious removal of unsatisfactory employees and in employee efficiency and discipline must be balanced against the employee's interest in continued public employment. He found that the "requirement of a prior evidentiary hearing would impose additional administrative costs, create delay, and deter warranted discharges." *Id.* at 168, 94 S.Ct. at 1651.

■ In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Court prescribed a balancing test to determine what process is due for the termination of a governmental benefit. The three factors that should be considered are (1) the private benefits that will be terminated, (2) the decreased probability of erroneous deprivation of benefits with additional procedural safeguards and, balanced against (1) and (2), (3) the cost to the government and the public of additional procedural safeguards. *Id.* at 335, 96 S.Ct. at 903.

In *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 778 (9th Cir.1982), we applied the balancing test of *Mathews v. Eldridge,* and held that a pretermination hearing would have mitigated damages on the facts of that case. In *Vanelli,* a school teacher, in the middle of a contract year, was dismissed on the basis of complaints by five female students that he was harassing them sexually. *Vanelli* is exactly the type of case in which the time element is not urgent compared to the impact of termination with its serious career implications for a teacher. A hearing with confrontation and rebuttal evidence should have been afforded in advance of dismissal. Dismissal was upheld, however, in that case on the basis of a post-termination hearing that satisfied due process.

■ Again, in *Jones v. Los Angeles Community College Dist.,* 702 F.2d 203 (9th Cir. 1983), we held that where a police officer was fired for dishonesty in taking other employment while on sick leave, a pretermination hearing was necessary to satisfy the balancing test of *Mathews v. Eldridge.* In *Jones,* as in *Vanelli,* there was no urgency about the time of the termination, and orderly process as well as fairness to the employee counselled a pretermination hearing. In the case at bar, however, Belnap was notified that he could resign or be fired immediately because the prison under his supervision was out of control and the governor had thought it necessary to call in the National Guard to maintain order. In this kind of exigency, there was no federal constitutional deprivation in obtaining Belnap's resignation on the spot and in making the hearing available afterward.

Hawaii's employee dismissal and appeals procedure in this case met the *Mathews* test. As in *Mathews,* the interruption of income of a state employee while he appeals a dismissal is not as important as the orderly functioning of government. The dismissed state employee ordinarily can find another job or draw unemployment compensation while making his case for reinstatement with back pay. Belnap was drawing retirement benefits.

Post-termination hearings that satisfy the *Mathews v. Eldridge* test allow former state employees to assert their rights while still protecting the public interest in efficient and decisive public administration. To require pretermination hearings in every case would not significantly add to the ability of dismissed employees to assert constitutional rights, but in some circumstances may threaten sensitive and important governmental operations.

The Hawaii Civil Service appeals process does not, *per se,* violate due process. The procedure was available and timely. Belnap did not avail himself of that procedure until too late. The State Civil Service Commission's rejection of his appeal was proper. *Stephens v. Postmaster General,* 623 F.2d 594 (9th Cir.1980). Belnap therefore was not deprived of his liberty or property interests without due process of law.

Affirmed.