Jacqueline M. JONES,
Plaintiff-Appellant/Cross-Appellee,

v.

LOS ANGELES COMMUNITY
COLLEGE DISTRICT,
Defendant-Appellee/Cross-Appellant.

Nos. 82–5319, 82–5351.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1983.

Decided March 25, 1983.

Gerald Masahiro Sato, Los Angeles, Cal., for plaintiff-appellant/cross-appellee.

Mary L. Dowell, Los Angeles Comm. College Dist., Los Angeles, Cal., for defendant-appellee/cross-appellant.

Frank T. Fekete, Bakersfield, Cal., amicus curiae.

Before: FARRIS and ALARCON, Circuit Judges, and SCHWARZER,* District Judge.

FARRIS, Circuit Judge:

The Los Angeles Community College District dismissed Jacqueline Jones on the principal ground that she accepted other employment while on sick leave. Jones brought this action alleging sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983. During the trial the district court granted Jones's motion under Fed.R.Civ.P. 15(b) to amend her complaint and assert an additional cause of action under 42 U.S.C. § 1983 alleging that the manner of her termination deprived her of procedural due process.

The trial court ruled for the District on the sex discrimination claim finding that Jones's discharge was based upon legitimate, nondiscriminatory grounds. It held for Jones on her procedural due process claim and awarded her $9000 for mental and emotional distress resulting from deprivation of liberty and property interests. Both parties appealed. We affirm but re-

---

* The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

mand for a redetermination of damages since we find that Jones was not deprived of a liberty interest.

## I. FACTS

Jones worked as a police officer at Los Angeles Pierce College. She had been a permanent classified employee of the District since 1971. On December 26, 1979, pursuant to Section 88016 of the California Education Code, Jones received notification that Pierce College intended to recommend her dismissal to the District's Board of Trustees. Attached to the notice was a copy of the statement of charges against her. In addition to the allegation of dishonesty in the use of sick leave, the charges included discourteous treatment of fellow employees, inattention to and dereliction of duty, and insubordination. The notice provided that any response should be made within seven days to Dr. Peter R. MacDougall, the Dean of Student Personnel Services at Pierce College. Dr. MacDougall, who had responsibility for investigating the charges, made the initial recommendation regarding Jones's termination. Though Jones had discussed the matter with him during his investigation, she made no response after receiving the formal notice. The Board of Trustees terminated her employment on January 10, 1980. The District's procedure accorded Jones no right to appear before the Board to rebut the allegations.

Jones appealed the decision to the District's Personnel Commission. *See* Cal. Educ. Code § 88124. A hearing officer conducted her appeal as a formal evidentiary proceeding. *Id.* §§ 88125, 88131. The hearing officer found most of the allegations in the statement of charges to be true and determined that in the aggregate they warranted her dismissal. On May 13, 1980, the Personnel Commission adopted the hearing officer's findings and proposed decision.

## II. ANALYSIS

### A. *Sex Discrimination*

■ Jones established a prima facie case of sex discrimination under Title VII. She belongs to a protected class, is qualified for the job she held, and upon her dismissal was replaced by a male. *Cf. Lynn v. Regents of the University of California,* 656 F.2d 1337, 1340–41 (9th Cir.1981), *cert. denied,* ——— U.S. ———, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982) (tenure decision). The burden of production thus shifted to the District to raise a genuine issue of fact as to whether it discriminated against her. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–1095, 67 L.Ed.2d 207 (1980); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Lynn,* 656 F.2d at 1344.

■ The District relied, among other evidence, on the hearing officer's proposed decision and on memoranda supporting notices of unsatisfactory service issued to Jones between July 1975 and October 1979 to demonstrate that it lacked discriminatory intent. Jones argues that this evidence is inadmissible hearsay which cannot serve to rebut the presumption of unlawful conduct. However, the District did not offer the documents to prove the truth of the allegations but to show that it had a legitimate basis for believing Jones's conduct warranted termination. The trial court properly considered them for this purpose. *See Ostroff v. Employment Exchange, Inc.,* 683 F.2d 302, 305 (9th Cir.1982) (per curiam).

■ The District satisfied its burden of coming forward with evidence to rebut the inference of discrimination raised by Jones's prima facie case. Its belief in the truth of the charges was a "legally sufficient" explanation for Jones' termination. *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–1095. Jones was therefore required to prove by a preponderance of the evidence that the nondiscriminatory ground for her dismissal was a pretext. *See id.* at 253, 256, 101 S.Ct. at 1093, 1095; *Green,* 411 U.S. at 804, 93 S.Ct. at 1825. The trial court found that she had failed to do so. Although Jones introduced evidence that the District conducted no meaningful investigations of

male officers accused of dishonest acts, the trial court determined that the only other case of misuse of sick leave involved a male custodian who was discharged. In light of the record as a whole, the trial court's finding that there was no disparate treatment is supported by substantial evidence.

### B. *Due Process Violation*

Due process demands that one be given "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 779–80 (9th Cir.1982) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). The District argues that the procedures it followed were substantially the same as those approved in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

■ In determining whether the District's procedure comported with due process, the trial court considered the three factors formulated in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976): the private interest affected by the official action; the risk of an erroneous deprivation of the private interest through the procedures used; and the governmental interest involved. Based on this analysis and our decision in *Vanelli,* the court ruled that due process required that Jones have a meaningful opportunity to rebut the charges before the District's Board of Trustees. We agree with the trial court that *Vanelli* demands that in the absence of an emergency there be an effective opportunity to confront charges and evidence prior to termination. 667 F.2d at 779; *accord Skelly v. State Personnel Board,* 15 Cal.3d 194, 215, 124 Cal.Rptr. 14, 28–29, 539 P.2d 774, 788–89 (1975).

■ Jones's option to meet with Dean MacDougall was too remote from the decision making process to provide the requisite due process. Dean MacDougall did not refer his recommendation to the Board of Trustees. Instead, he forwarded it to the President of Pierce College, who concurred in his evaluation and in turn sent the recommendation to the Chancellor of the District for further review. Additionally, there is adequate support in the record for the district court's finding that if Jones had availed herself of her opportunity for a hearing, there was no assurance that her statements would have been impartially communicated to the Board of Trustees. In *Arnett* the applicable federal regulation governing agency dismissals provided that if an employee desired to respond to charges made against him, "the agency shall consider his answer in reaching its decision." 5 C.F.R. § 752.202(b) (current version at 5 C.F.R. § 752.301), *quoted in* 416 U.S. at 143–44 n. 10, 94 S.Ct. at 1639 n. 10 (opinion of Rehnquist, J.). The regulation also mandated that the agency representatives "designated to hear the answer shall be persons who have authority either to make a final decision on the proposed action or to recommend what final decision should be made." *Id.* These safeguards against erroneous deprivation distinguish the *Arnett* procedures from those followed here.

■ Though the District unconstitutionally deprived Jones of a property right in her employment between her termination on January 10, 1980, by the Board of Trustees and the Personnel Commission's adoption of the hearing officer's decision on May 13, the manner in which the charges were pressed did not implicate a liberty interest. The trial court concluded that by denying Jones a meaningful opportunity to be heard, the District infringed a liberty as well as a property interest. However, in this situation, a liberty interest is implicated only "if a charge impairs [one's] reputation for honesty or morality. The procedural protections of due process apply if the accuracy of the charge is contested, *there is some public disclosure of the charge,* and it is made in connection with the termination of employment or the alteration of some right or status recognized by state law." *Vanelli,* 667 F.2d at 777–78 (emphasis added); *see Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976).

In *Vanelli* the trial court found public disclosure following the school board's initial procedurally deficient termination proceeding sufficient to adversely affect Vanelli's opportunity for future employment. 667 F.2d at 778 n. 7. Here the trial court made no finding that there had been public disclosure of the charges against Jones prior to the post-termination hearing. Jones's assertion that the Board of Trustees agenda for the date of her dismissal identified her is not persuasive since the document refers to her only by an employee number. Though Jones testified that prospective employers made inquiries into her personnel file and interviewed her about the circumstances surrounding her dismissal, the record does not indicate whether the inquiries were made before or after the Personnel Commission adopted the findings of the hearing officer. Once the charges against Jones were validated at an evidentiary hearing which comported with due process, a subsequent disclosure of the reasons for dismissal would not violate her constitutional rights. *Codd v. Velger,* 429 U.S. 624, 627–628, 97 S.Ct. 882, 883–884, 51 L.Ed.2d 92 (1977); *Beller v. Middendorf,* 632 F.2d 788, 806 (9th Cir.1980).

### C. *Damages*

Since Jones's dismissal was upheld in the evidentiary hearing, she may not recover for injuries relating to her loss of employment. She is entitled only to compensation for actual harm resulting directly from failure to accord her a meaningful pretermination hearing. *See Carey v. Piphus,* 435 U.S. 247, 260 & n. 15, 98 S.Ct. 1042, 1050–1051 n. 15, 55 L.Ed.2d 252 (1978); *Vanelli,* 667 F.2d at 781. Jones claims that she has suffered mental and emotional distress. While such harm is compensable under 42 U.S.C. § 1983, she must still demonstrate that her injury resulted directly from the wrongful deprivation of due process. *Carey,* 435 U.S. at 264, 98 S.Ct. at 1052–1053.

The trial court awarded Jones's $9000 "for the mental and emotional distress actually caused by the deprivation of plaintiff's liberty and property interests without due process between January 10 and May 13, 1980." Memorandum Decision at 10. The record supports the finding that Jones suffered mental and emotional distress because she believed that the District treated her unfairly. This is not a case in which the complainant did not know that there had been a due process violation until she enlisted the aid of counsel to challenge a perceived substantive violation. *Id.* at 263, 98 S.Ct. at 1052. Jones asked Dr. MacDougall for an investigatory hearing prior to her dismissal and the request was denied.

Since the District did not impair a liberty interest, the damage award should have been based solely on Jones's right to due process protection of her property in employment. "We cannot say, as a matter of law, that an individual will experience the same intensity and degree of suffering when a procedural deprivation impairs both a liberty and property interest as when it impairs only a property interest." *Vanelli,* 667 F.2d at 781. We thus remand to allow the district court to reconsider its damage award in the light of our holding that Jones failed to establish an impairment of her liberty interest.

AFFIRMED in part and REVERSED and REMANDED in part.